**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Timothy Moss,                          )
                                       )     No. CIV 04-1475-PHX-DKD
               Plaintiff,              )
                                       )
vs.                                    )
                                       )     **ORDER**
Jo Anne Barnhart, Commissioner of the  )
Social Security Administration,        )
                                       )
               Defendant.              )
                                       )
_____)

     Timothy Moss appeals the Commissioner of the Social Security Administration's decision to adopt the Administrative Law Judge's ("ALJ's") ruling denying his claim for disability benefits.  In denying Moss's claims, the ALJ rejected Moss's testimony and the treating physician's opinion, without providing the requisite reasons for doing so, and instead, relied on the opinion of a consultative state agency physician.  This Court has jurisdiction under 42 U.S.C. § 405(g) and finds that the ALJ's reasons for denying Moss's claims are not supported by substantial evidence.[1]  This Court also finds that the record is complete, that a remand for further proceedings is unnecessary, and that the matter should be remanded for payment of benefits.

_____

    [1]The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C § 636(c) (Doc. #8).

**BACKGROUND**

Moss was born on April 11, 1954 (TR 64).  He has a high school education and some vocational training as a welder (TR 21).  He consistently worked at heavy-exertion jobs including construction worker and crew leader for a pool construction company and for a utility company until July 2000, the onset date of his alleged disability (TR 70).  He protectively filed an application for disability and Supplemental Security Income benefits on January 24, 2002 (TR 20).  He alleged disability as of July 2000 due to chronic pancreatitis,[2] degenerative joint disease, back/neck pain and soreness, chronic eczema,[3] depression, heartburn, nausea, and vomiting (TR 21, 69, 453).  On April 29, 2003, the ALJ issued a decision denying Moss Disability Insurance Benefits and Supplemental Security Income benefits (TR 26).  Moss timely filed a request for review (TR 442).  The Appeals Council denied Moss's request for review and adopted the ALJ's decision as the final decision of the Commissioner of the Social Security Administration (TR 38, 437).  Moss brought this action within 60 days of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Treating Physicians

Dr. Murray Cohen, a specialist in gastroenterology, has been treating Moss since 1996 for chronic calcific pancreatitis (TR 306).  Dr. Cohen has examined Moss at least 42 times, conducting laboratory tests which continued to verify Moss's condition of chronic pancreatitis (TR 136-312).  The medical evidence indicates that the onset of the chronic pancreatitis was the result of alcohol abuse; Moss quit drinking alcohol in 1996 (TR 22).  Dr. Cohen consistently treated Moss's pancreatitis with pain medications such as Darvocet and Demerol (*Id.*).  On October 8, 2001, Dr. Cohen reported that Moss was completely disabled from his regular

---

[2]Chronic calcific pancreatitis occurs when there is the formation of mineral deposits in and around the pancreas , in addition to the inflammation and swelling of the pancreas.  *Stedman's Medical Dictionary* 221, 1075 (5th ed. Lippincott Williams & Wilkins 2005).

[3]Eczema is an inflammatory condition of the skin, which often itches and burns, and skin may become scaly.  *Stedman's Medical Dictionary* 452 (5th ed. Lippincott Williams & Wilkins 2005).

occupation and any other occupation, and would remain so indefinitely (TR 147).  On April 4, 2003, Dr. Cohen completed an Acute/Chronic Pain Functional Capacity Questionnaire as part of Moss's application process for disability benefits (TR 416).  Dr. Cohen reported that Moss was suffering from a moderately severe level of pain ("pain seriously affects ability to function") (TR 415).  He also reported that this degree of pain could be expected to result from documented, objective clinical or diagnostic findings in Moss's record (*Id.*).  Finally, Dr. Cohen concluded that Moss frequently experienced severe pain that interfered with his attention and concentration and resulted in a failure to complete tasks in a timely manner (TR 416).

State Agency Physicians

Dr. Keith Cunningham examined Moss on May 30, 2002 (TR 336-338).  Although the Commissioner's regulations state that "any necessary background information about [the patient's] condition"[4] will be furnished to the examiner, it does not appear that Dr. Cunningham reviewed any of Moss's background medical records (*Id.*).  The physical examination tested the motion of the joints, examined the head, eyes, ears, nose, and throat, and included a cardiovascular exam (TR 337-338).  Dr. Cunningham diagnosed Moss with chronic pancreatitis, lower back pain, and a history of eczema.  But he reported that Moss was currently doing well (TR 338).  In his assessment of Moss's functional capabilities to do work-related activities, Dr. Cunningham found that Moss could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk about 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday (TR 339-340).

Dr. Elliot D. Salk, a psychologist, examined Moss on July 12, 2002 (TR 341).  Dr. Salk spoke with Moss about his depression and tested Moss's concentration, memory, and intellectual functioning (TR 341-344).  Dr. Salk diagnosed Moss with Dysthymic Disorder, mild and episodic and Alcohol Abuse or Dependence, Sustained Full Remission (TR 345).  However, he found that Moss's concentration, memory and intellectual functioning were adequate, reporting

---

[4]20 C.F.R. §§ 404.1517, 416.917

- 3 -

that Moss was "able to manage his funds" (*Id.*).  Dr. Salk also assessed Moss's mental ability to perform work-related activities.  He reported that Moss's ability to make occupational adjustments, performance adjustments, and personal-social adjustments in a work atmosphere was either unlimited/very good, or limited but satisfactory (TR 346-347).

On June 24, 2002, a non-examining medical consultant hired by the Office of Hearings and Appeals assessed Moss's residual functional capacity (TR 396).  On September 5, 2002, another non-examining medical consultant hired by the Office of Hearings and Appeals assessed Moss's residual functional capacity (TR 369).  Both consultants reported that Moss could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for about 6 hours, and sit for about 6 hours (TR 363, 390).  Both consultants concluded that Moss's symptoms were attributable to a medically determinable impairment, but that the severity or duration of his symptoms was  not supported by the medical evidence (TR 367, 394).  Both consultants found Moss only partially credible (*Id.*).  The first consultant reported that there were treating source conclusions that significantly differed from his findings (TR 395).  Oddly, the second consultant did not find that any treating or examining source's conclusions significantly differed from his conclusions (TR 368).

On July 23, 2002 and September 5, 2002, disability examiners hired by the Office of Hearings and Appeals completed a Medical/Vocational Evaluation Guide (TR 371, 408).  Both examiners concluded that Moss could not perform any of his past work (TR 370, 407).  However, both examiners concluded that Moss could perform other work such as a checker, caretaker, or cleaner, and a laundry worker, linen-room attendant, or doorkeeper (TR 371, 408).

Administrative Hearing

On April 23, 2003, Dr. Clifford J. Harris, a medical expert, Moss, and Marilyn Kinnier, a vocational expert, testified before the ALJ (TR 447).  The medical expert ("ME") began his testimony with a synopsis of Moss's medical records.  He testified that according to the record (1) Moss had experienced severe abdominal pain since 1990, (2) Moss's amylase levels were for years far above normal, a symptom of pancreatitis and alcoholism, (3) an MRI showed that

- 4 -

Moss had calcific pancreatitis in 1996, (4) Moss had at least 10 hospitalizations because of his pancreatitis, and (5) Moss experienced depression (TR 452-456). In the ME's opinion, Moss suffered from chronic calcific pancreatitis, past alcoholism in remission, nicotine addiction, modest depression, and rare eczema (TR 456). The ME concluded that Moss should be able to sustain a modest amount of work including standing, sitting, some walking, and lifting up to 25 pounds once in a while (TR 457, 463-464). But the ME qualified that conclusion testifying that "it is contingent on how severe this pain is" (TR 457). He explained that most patients with calcific pancreatitis who quit drinking recover (*Id.*). Nonetheless, he again qualified that "[t]here are those that do continue, and the pancreatitis can smoulder on" (*Id.*). In a qualification of this qualification, the ME testified that in his experience patients who do not recover continue to have high amylase and lipase levels and that Moss's recent medical records, which show frequently normal lipase and amylase levels, suggest Moss should be getting better (TR 457, 471).

The ME also expressed concern about the amount of Demerol Dr. Cohen consistently prescribed for Moss. He testified that taking sixty 100mg Demerol tablets every thirty days was "a lot" and that addiction was a likelihood (TR 462, 465). But the ME testified that this drug intake would not prevent Moss from working (TR 464). When asked whether this conclusion would change because Moss experiences episodes of increased pain rather than steady daily pain, the ME testified "I really can't answer your question because, as I say, it's different in different patients. . . . And I'm not going to second guess [Dr. Cohen]" (TR 465).

Moss testified that he experiences episodes of increased pain due to his pancreatitis one to four times a month (TR 459). He testified that these episodes last from two to seven days (*Id.*). Moss could not identify anything that triggered these episodes of increased pain (TR 460). Moss testified that in March he took close to sixty 100 mg Demerol tablets for his pain (TR 462).

The vocational expert ("VE") testified that Moss previously worked in heavy exertion, semi-skilled to skilled jobs such as a crew leader in pool installation, construction, and utility

1   and gas distribution (TR 481). The VE testified that a hypothetical person with the functional

2   capabilities the ME attributed to Moss could no longer do any of these jobs, but that this

3   hypothetical person could do unskilled jobs such as parking lot attendant, cashier, and courier

4   (TR 481). According to the VE, there are 247 courier positions in Arizona, 550 parking lot

5   attendant positions in Arizona, and 11,000 cashier positions in Arizona (TR 482). On cross-

6   examination by Moss's attorney, the VE testified that a person with pain at moderately severe

7   levels that frequently interferes with attention and concentration, the degree of pain Dr. Cohen

8   attributed to Moss, would not be able to do any work on a sustained basis (TR 483).

9   <u>ALJ's Decision</u>

10           The ALJ found that Moss was not disabled within the meaning of the Social Security Act

11   and therefore is not entitled to a period of disability, Disability Insurance Benefits, or Social

12   Security Income payments under Sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social

13   Security Act (TR 26). In reaching this conclusion, the ALJ found that (1) Moss has not engaged

14   in substantial gainful activity since his alleged onset date (TR 21); (2) the medical evidence

15   shows that Moss suffers from chronic calcific pancreatitis and cervical degenerative joint

16   disease/degenerative disc disease (TR 23); (3) these impairments are severe within the meaning

17   of the Regulations but do not meet or equal one of the impairments listed in Appendix 1,

18   Subpart P, Regulation No. 4[5] (TR 23); (4) Moss is not entirely credible (TR 23); (5) Moss has

19   a good work and earnings history (TR 24); (6) there are clear and convincing reasons to reject

20   Dr. Cohen's opinion (TR 24); (7) Moss would not be able to perform his past relevant work (TR

21   25); and (8) Moss would be able to perform other unskilled, sedentary work that is found in

22   significant numbers in the national economy (TR 25).

23           The ALJ found that Moss was not entirely credible because he exaggerated his symptoms

24   and limitations and has been addicted to alcohol and nicotine (TR 23-24). The ALJ concluded

25

26   _____

27       [5]*See* 20 CFR §§ 404.1520 and 416.920 detailing the five step evaluation that determines whether a claimant is disabled.

28                                     - 6 -

1   that Moss was exaggerating because the objective medical evidence that Moss's enzyme levels

2   were normal or slightly above normal did not support Moss's description of his pain (*Id.*).  The

3   ALJ relied on the ME's testimony in deciding that normal enzyme levels generally suggest a

4   lack of abdominal pain caused by calcific pancreatitis (*Id.*).  The ALJ relied on his own

5   understanding of human addictive behavior, and the ME's opinion that the use of nearly 200

6   milligrams of Demerol per day is likely to lead to addiction, in concluding that "it is not unlikey

7   [sic] that the claimant is exhibiting drug-seeking behavior."  (TR 24).

8       The ALJ's  reasons for rejecting Moss's primary treating physician's opinion were (1)

9   that the objective clinical or diagnostic findings that supported the degree of Moss's pain were

10  not documented in the record, and (2) that Dr. Cohen's medical opinions are not consistent with

11  his own treatment notes or other evidence of record (TR 24).

12      The ALJ decided that Moss could make an adjustment to other work found in significant

13  numbers in the economy based on the vocational expert's testimony (TR 25).  The ALJ

14  concluded that Moss was therefore not disabled (TR 25).  The ALJ did not address the

15  vocational expert's testimony that a hypothetical person with the residual functional capacity

16  assigned to Moss by Dr. Cohen would not be able to sustain gainful work.

17                          **STANDARD OF REVIEW**

18      The Court must affirm the ALJ's finding if they are supported by substantial evidence

19  and are free from reversible error. 42 U.S.C. § 405(g); *Marcia v. Sullivan*, 900 F.2d 172, 174

20  (9th Cir. 1990);  *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence

21  is more than a scintilla, but less than a preponderance; it is "such relevant evidence as a

22  reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402

23  U.S. 389, 401 (1971).  In determining whether substantial evidence supports the ALJ's decision,

24  the court considers the record as a whole, weighing both the evidence that supports and detracts

25  from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1988); *Tylitzki v.*

26  *Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993).  The ALJ is responsible for resolving conflicts,

27  ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995);

28

1  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Where the evidence is susceptible to

2  more than one rational interpretation, the ALJ's decision must be upheld.  *Magallanes*, 881 F.2d

3  at 750.  However, the Court must do more than merely rubberstamp the ALJ's decision.  *Winans*

4  *v. Bowen*, 853 F.2d 643, 645 (9th Cir. 1988).

5                              **DISCUSSION**

6  Claimant's Credibility

7          The ALJ's reasons for rejecting Moss's testimony about the severity of his pain are not

8  supported by substantial evidence.  The ALJ is responsible for determining credibility, resolving

9  conflicts in medical testimony, and resolving ambiguities.  *Andrews,* 53 F.3d at 1039.  But the

10  ALJ's findings must be supported by specific, cogent reasons.  *Reddick*, 157 F.3d at 722.  "If

11  a claimant produces evidence that he suffers from an ailment that could cause pain, 'the ALJ can

12  reject the claimant's testimony about the severity of [his] symptoms only by offering specific,

13  clear and convincing reason for doing so.'"  *Light v. Social Security Administration*, 119 F.3d

14  789, 792 (9th Cir. 1997).

15          The ALJ found that Moss suffered from chronic pancreatitis, an ailment that can cause

16  pain (TR 22).  The "specific, clear and convincing reasons" the ALJ gave for discrediting Moss

17  are (1) that the objective medical evidence did not support Moss's description of the severity of

18  his pain and (2) that "it is not unlikely that the claimant is exhibiting drug-seeking behavior"

19  (TR 23-24).  The ALJ's first reason is unconvincing because when there is evidence supporting

20  a claimant's underlying impairment, an ALJ may not discredit a claimant's testimony about the

21  severity of his symptoms merely because they are not supported by the objective evidence.

22  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).  The ALJ's second reason is unconvincing

23  because nowhere has the ALJ pointed to affirmative evidence of this conclusion.  The ALJ

24  concluded that because Moss has been addicted to nicotine and alcohol he is likely addicted to

25  pain medication and is exaggerating the severity of his pain in order to get more pain

26  medication.  The ALJ's only support for this conclusion is that the non-examining ME stated

27  that taking sixty 100 mg Demerol tablets every thirty days is likely to lead to an addiction (TR

28

- 8 -

24).  While the medical expert did make this statement, he also stated that he could not say whether Moss was addicted to pain medication (TR 477).  Furthermore, the record shows that Dr. Cohen, Moss's treating physician, was cognizant of the risk of addiction and was monitoring Moss carefully to ensure Moss was not addicted (TR 138, 159, 170, 186, 194, 202, 222, 227, 236, 286, 299).  As Moss's treating physician, Dr. Cohen had a superior vantage point from which to observe and could base his findings not only on the objective evidence, but also on his subjective judgment. *See Lester*, 81 F.3d at 832-833.  The record also shows that Moss told Dr. Cohen when he was feeling better (TR 149, 165, 170, 183, 211).  This is unlikely behavior for someone intent on exaggerating the severity of their pain in order to get pain medication. *See Reddick*, 157 F.3d at 724.  The Court concludes that the ALJ provided unsatisfactory reasons for discounting Moss's credibility and that his findings were unsupported by substantial evidence in the record.

Treating Physician's Opinion

The ALJ failed to provide specific or legitimate reasons for discrediting Dr. Cohen's opinion.  The ALJ must give a treating physician's opinion more weight than a non-treating physician's opinion. *Reddick*, 157 F.3d at 725.  In addition, the ALJ must give a specialist's opinion about medical issues related to his specialty greater weight. *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004).  Even when the treating physician's opinion is contradicted by another physician, the ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion. *Reddick*, 157 F.3d at 725.  An ALJ provides specific and legitimate reasons when he sets out a detailed and thorough factual summary of the conflicting clinical evidence and explains how his interpretation is correct. *Id.*

As his specific and legitimate reasons for rejecting Dr. Cohen's opinion, the ALJ listed (1) the lack of objective evidence supporting Dr. Cohen's opinion of the severity of Moss's pain and (2) inconsistencies between Dr. Cohen's opinion and other evidence in the record (TR 24). The first reason is not legitimate because objective evidence need only support an underlying impairment, not the severity of a claimant's pain. *Lester*, 81 F.3d at 834; *Fair v. Bowen*, 885

F.2d 597, 601 (9th Cir. 1989).  "Because pain is a subjective phenomenon . . . it is possible to suffer disabling pain even where the *degree* of pain, as opposed to the mere *existence* of pain, is unsupported by objective medical findings."  *Fair*, 885 F.2d at 601.  The second reason is not specific because the ALJ makes no effort to explain how the evidence is inconsistent with Dr. Cohen's opinion (TR 24).  While the ALJ does set out a factual summary of the clinical evidence, he does not explain why his interpretation is correct.  *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (finding that the ALJ did not provide sufficient specific reasons for rejecting a treating physician's testimony when he merely stated that the testimony was not supported by objective findings and was inconsistent with other evidence).  Particularly when Dr. Cohen was the only specialist in gastroenterology consulted, the Court finds that the ALJ failed to provide specific and legitimate reasons for rejecting the treating physician's opinion.

Vocational Expert's Opinion

The ALJ erred by failing to include the limitations attributed to Moss by Dr. Cohen in his hypothetical question to the VE.  Thus, the ALJ erred when he relied on the VE's testimony that Moss could perform other unskilled jobs in finding that Moss was not disabled.  *See* 42 U.S.C. § 423(d)(2)(A) (2003) (defining disability as physical or mental impairment(s) that prevent a claimant from engaging in any substantial gainful work that exists in the national economy).  "Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant... ."  *Magallanes*, 881 F.2d at 756, *quoting Embrey,* 849 F.2d at 422.  The ALJ's hypothetical question asked the VE to assume the limitations the ME attributed to Moss.  In restricting the question to the limitations the ME attributed to Moss, the ALJ did not include the limitations Dr. Cohen attributed to Moss.  As previously discussed, the ALJ did not provide sufficient reasons for rejecting Dr. Cohen's opinion.  Thus, the ALJ may not rely on a VE's response to a hypothetical question that failed to include the limitations testified to by Dr. Cohen.

**REMAND**

The decision whether to remand a case for additional evidence or for an award of benefits is within the discretion of this Court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989). A remand for further proceedings is unnecessary if the record is fully developed and it is clear form the record that the ALJ would be required to award benefits. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). This rule recognizes the importance of expediting disability claims. *Ghokassian v. Shalala*, 41 F.3d 1300, 1305 (9th Cir. 1994).

When the ALJ fails to properly refute a claimant's testimony regarding his symptoms, that testimony is accepted as true as a matter of law. *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.6 (9th Cir. 1989). Here, the ALJ did not provide clear and convincing reasons for characterizing Moss's testimony as not credible. Therefore, Moss's testimony is accepted as true as a matter of law.

When the ALJ does not provide adequate reasons for rejecting an examining physician's opinion, that opinion is credited as a matter of law. *Lester*, 81 F.3d at 834. In this case, the ALJ did not provide adequate reasons for rejecting the opinion of Dr. Cohen, the treating physician. Therefore, his opinion that Moss suffers from moderately severe pain that frequently interferes with his attention and concentration, which results in a failure to complete tasks in a timely manner is accepted as a matter of law.

The Vocational Expert testified that someone with moderately severe pain that frequently interferes with attention and concentration, which results in a failure to complete tasks in a timely manner would be unable to engage in work on a regular, sustained basis (TR 483). Thus, Moss qualifies as disabled.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #13) is **GRANTED**.

. . .

. . .

. . .

1      **IT IS FURTHER ORDERED** that Plaintiff's claim for disability, Disability Insurance

2  Benefits, and Supplemental Security Income is remanded to the Commissioner of the Social

3  Security Administration for an award of benefits.

4      DATED this 30th day of September, 2005.

 

 

 

_____
David K. Duncan
United States Magistrate Judge

- 12 -